On August 13, 1981, the appellant, Willie Lee Carthon, alias Willie Lee Pryor, was indicted by the Grand Jury of Covington County for assault in the first degree in violation of Section13A-6-20 (a)(1) of the Code Of Alabama. On September 16, 1981 counsel was duly appointed by the court to represent the appellant. On October 19, 1981 the appellant was duly arraigned, and entered a plea of not guilty. On November 5, 1981 demurrers were filed to the indictment. On November 17, 1981, after a jury trial, the jury found the appellant guilty as charged, and he was duly sentenced to be imprisoned in the penitentiary for a period of 10 years, notice of appeal to this Court was given, and bond was set for the appellant. A free copy of the transcript and record in this cause, and counsel to represent the appellant, was ordered by the trial court. On December 9, 1981 appellant filed a motion for a new trial. The motion was set for a hearing on December 18, 1981, and notice given to the district attorney and appellant's attorney. After a hearing on the motion for a new trial, all parties being present, and given an opportunity to submit evidence, the motion was overruled by the court.
The appellant was represented at all proceedings in the trial court, and is in this Court, by counsel appointed by the trial court. This appeal was submitted to this Court on briefs.
The appellant states in his brief that "we are not narrating the entire testimony since *Page 295 
we are alleging certain specific errors, and not claiming that the affirmative charge was due. In fact, we did not ask for the general affirmative charge." The appellant argues in his brief four reasons why he should be granted a new trial. First, the court erred to the prejudice of the appellant when it denied his petition for youthful offender treatment when the defendant was 15 years of age when the alleged offense occurred. Second, the court erred by overruling appellant's demurrer to the indictment when it charged the appellant used a, "deadly weapon instrument" alleged to be a kitchen knife. Third, the court erred to the prejudice of the appellant when it allowed into evidence a voluntary statement of the appellant made to an officer when the appellant was 15 years of age, and in the custody of the sheriff, and an attorney representing appellant was not present, concerning his wounding the prosecutrix, "I didn't mean to hurt her." Fourth, that the court erred when it overruled appellant's motion for a new trial on the grounds that the appellant's insanity should be inquired into.
Appellant contends in his brief that the trial court denied appellant's petition for youthful offender treatment without any type of a hearing; that the court's ruling was based exclusively on the report of the probation officer. The record in this case shows that the petition was filed on September 16, 1981, and an order made by the court that the probation officer make an investigation, and the petition was set to be heard before the court on October 19, 1981 at 9:00 o'clock, A.M., at which time the appellant was present, his counsel was present, and the hearing was had, and the court denied the petition, and ordered that the appellant be tried as an adult under the general laws of the State of Alabama. At this time there was before the court the report of the probation officer. The proceedings in the juvenile court are included in the record. The appellant was afforded, at the time of the hearing on the petition for youthful offender treatment, an opportunity to offer evidence in his behalf.
We quote from the case of Morgan v. State, Ala.Cr.App.363 So.2d 1013, where Judge Bowen said:
 "The Youthful Offender Act vests in the trial judge almost absolute discretion to grant or deny youthful offender status after making an appropriate investigation. McClendon v. State, 341 So.2d 174
(Ala.Cr.App. 1976); Section 15-19-1, Code of Alabama 1975. This act does not require a full, formal hearing or an investigation by a probation officer in every case. Clemmons v. State, 294 Ala. 746, 749, 321 So.2d 238 (1975). While we have no indication of why youthful offender status was denied in this case, the trial judge is not required to state his reasons for denying youthful offender status. This court will not overturn that exercise of discretion except where it affirmatively appears that the decision of the trial judge was arbitrary or made without some examination or investigation of the youthful offender. Watkins v. State, 357 So.2d 156 (Ala.Cr.App.), cert. denied, 357 So.2d 161 (Ala. 1977). It is not for this court to overturn the decision of the trial judge in denying youthful offender status simply because we would not have made that same decision."
We find nothing in the record of this case indicating that the decision of the trial judge was arbitrary, or that there was an abuse of his discretion. Morgan v. State, supra; Prince v. State, Ala.Cr.App. 392 So.2d 853; Certiorari Denied, Ala. 392 So.2d 857;Code Of Alabama, 1975, Sec. 15-19-1.
The appellant's second contention in his brief is that the trial court erred to his prejudice when it overruled his demurrer to the indictment. The appellant was indicted on August 13, 1981, arrested on August 17, 1981, released on bond August 19, 1981, counsel was appointed to represent the appellant on September 16, 1981, and a petition for youthful offender treatment was filed. On October 19, 1981, after a hearing on the petition, it was denied, and the appellant entered a plea of not guilty. On November 5, 1981 appellant filed a demurrer to the indictment, and the demurrer was *Page 296 
overruled. The indictment charges, as follows:
 "Willie Lee Carthon, Alias Willie Lee Pryor, whose name is unknown to the grand jury other than as stated, did with intent to cause serious physical injury to another person, caused serious physical injury to Velma Pryor by means of a deadly weapon, instrument, to-wit, a kitchen knife in violation of Section 13A-6-20 of the Code of Alabama."
The indictment is sufficient to sustain a jury verdict finding the appellant guilty of assault in the first degree in violation of Sec. 13A-6-20 (a)(1) of the Code of Alabama.
A demurrer to an indictment should be filed before a plea of not guilty is entered, unless the court grants the defendant the right to do otherwise. Appellant's demurrer having been filed 17 days after his plea of not guilty had been made, we hold that the trial court did not err in overruling appellant's demurrer.Edwards v. State, Ala.Cr.App. 379 So.2d 336; Certiorari Denied, Ala. 379 So.2d 339; Flowers v. State, Ala.Cr.App. 402 So.2d 1088;Certiorari Denied, Ala. 402 So.2d 1094; Pinkard v. State, Ala.Cr.App. 405 So.2d 411.
Appellant's third contention in his brief is that the trial court erred when it allowed into evidence a statement of the appellant made to Officer Treadaway, when the appellant was 15 years of age, and in the custody of the sheriff, and an attorney representing appellant was not present, concerning the appellant wounding the prosecutrix. We quote from the record on a voir dire examination out of the presence and hearing of the jury.
"BY MR. LANIER:
 "Q. Would you describe to the Court the circumstances surrounding this statement? Where was Willie Carthon?
 "A. Willie Lee Carthon was located in the cell in the back, in the ladies' cell.
"Q. By himself?
"A. By himself.
"Q. And, what did you do?
 "A. What I did when I came into work, Sergeant Williamson told me that they had arrested a subject by the name of Willie Lee Carthon. I said, is that the same Willie Lee that I know? And he said, well, I am not for sure. So, I said, let me see if it is the same one. So, I got the jail key and went back to open the cell door, which is a big door, and when I opened it, I saw Willie Lee. He saw me and he said, I didn't mean to hurt her. I closed the door to, locked it back and went back.
 "Q. Okay. Did you ask him anything or say anything to him before you —
"A. No, sir.
 "Q. He just responded to you before you had an opportunity to say anything?
"A. That's right.
"Q. Never asked him any questions?
"A. No, sir.
"Q. That's all.
"THE COURT: You want to ask him anything?
 "MR. COOK: We want to move to exclude the statement because it is not inculpatory. It is not in the nature of a confession or anything because it would have no bearing on how the incident occurred.
"THE COURT: I will admit it.
"MR. COOK: We except.
 "(Whereupon, Court was resumed back in the presence of the jury with all parties and counsel present.)
"THE COURT: You gentlemen may proceed.
 "(Whereupon, the continued examination of Billy Treadaway was continued.)
"CONTINUED DIRECT EXAMINATION
"BY MR. LANIER:
 "Q. Mr. Treadaway, the day after this incident occurred in Barton Quarters, did you have an occasion to see Willie Lee Carthon?
"A. Yes, I did.
 "Q. Would you describe where Willie Lee Carthon was at the time? *Page 297 
 "A. He was located in the back where we lock the prisoners up and he was located inside the cell where we normally lock white people or females up.
"Q. What day was this?
"A. I believe it was on June the tenth.
 "Q. In relation to the incident, that is the next day?
"A. The next day.
"Q. The next morning?
"A. Yes, sir.
"Q. What did you do?
 "A. I went back. Sergeant Williamson had told me that he had picked up a subject and his name was Willie Lee Carthon and I asked him was it the same subject that we had dealings with or I had dealings with before. He said he didn't know for sure. So, I got the jail key, went back, opened the big door that goes into the cell, and I opened the door. Willie Lee was in there by himself and when he saw me he said, I didn't mean to hurt her. So, I closed the door, locked it back and went back up front.
 "Q. Did you have an opportunity just prior to that to say anything to Willie Lee?
"A. I didn't say anything.
"Q. You didn't ask him any questions?
"A. No, sir.
 "Q. And he responded without you having an opportunity to say anything, is that correct?
"A. Yes, sir. That's correct.
"MR. LANIER: No other questions."
The appellant cites the case of Watts v. State, Ala.Cr.App.361 So.2d 1200 decided by this Court on August 29, 1978 correctly holding that it was reversible error to allow into evidence a voluntary confession of a child, when he did not have counsel present at the time the confession was obtained, and that it is irrelevant that the appellant's confession was voluntarily made, citing Section 12-15-67, Code Of Alabama, 1975.
The offense charged in the indictment occurred on June 9, 1981. The voluntary statement made by the minor in this case was made on June 10, 1981, and the trial of this case was conducted on November 17, 1981. Since the case of Watts v. State, supra, the Legislature of Alabama enacted into law an act to repeal section 12-15-67 of the Code of Alabama, 1975. This act provides:
 "Acts Of Alabama, Regular Session, 1981, Vol. 1, Page 500. Act No. 81-344. Section 1. Section 12-15-67 of the Code of Alabama 1975 is hereby expressly repealed. Section 2. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law. Approved April 29, 1981. Time 11:00 A.M."
We hold that the trial court did not err to the prejudice of the appellant when it allowed into evidence the voluntary statement made by the appellant to Officer Treadaway.
The fourth contention in appellant's brief is that the trial court erred to his prejudice in overruling appellant's motion for a new trial on the ground that the appellant's insanity should be inquired into. In effect that the verdict of the jury and sentence of the court should be set aside, and the appellant granted a new trial to present the defense of insanity.
On the motion for a new trial, counsel who represented the appellant at his trial before the jury was called as a witness by appellant, and testified, in substance: That while the jury was out considering its verdict the appellant talked with his counsel, and this led counsel to believe that the appellant was simply unable to act as an adult in any way in discussing his case with counsel. That counsel assumed that the appellant's mental condition was such that he is sick, or incompetent, and in counsel's opinion that somehow, some way, a different arrangement should be worked around to where that fact could be clearly presented to the jury, and that is my testimony about it.
That appellant's counsel was appointed about September 16, 1981, and the trial was held November 17, 1981. *Page 298 
Appellant's mother, a witness called by the appellant, testified, in substance: That appellant was 15 years old when the stabbing took place, and is now 16 years of age. That he was expelled from school when he was in the ninth grade, that appellant can hold down a job, he can work, that he sniffed gasoline, that she had not had him at the Mental Health Office, but that Mr. Underwood had interviewed him, but did not give him any kind of medicine, that Underwood told her appellant was really kind of sick.
Mr. William D. Underwood, a witness called by the appellant, testified, in substance, as follows: That he is a Mental Health Counselor with the Mental Health Department in Andalusia. That he has an undergraduate degree in Clinical Psychology, and a master's level degree in Clinical Psychology. That he has been in mental health field for about seven years. That under certain circumstances he would be able to ascertain, after counseling with an individual, whether or not they were likely to have mental diseases, or mental retardation, or deficiencies of one kind or another. That he had consulted with the appellant on three occasions at the request of Roger Powell, the probation officer. That he consulted some with the appellant's mother about the appellant. Whereupon, appellant's counsel asked Mr. Underwood, "Well, from your dialogue with him there, and background information that you obtained, were you able to form any opinion as to his mental condition, with reference to mental sickness, and any competency, or anything of that kind? Abnormality?" The state's counsel objected to the question, and the court sustained the objection, and counsel for appellant stated that, "We are going to except to the court's ruling there, and we are going to offer to show that first of all, that he was different, and second, that it was of such a nature that it would not show up readily to an attorney that was trying to carry on conversations with him and so forth."
Code Of Alabama, 1975, Section 15-16-1 provides that when the defense of insanity is set up in any criminal prosecution, it must be by special plea, interposed at the time of arraignment and entered of record upon the docket of the court, which, in substance, shall be "not guilty by reason of insanity." A plea of insanity shall not preclude the usual plea of the general issue, which shall not, however, put in issue the question of the irresponsibility of the accused by reason of his alleged insanity, this question being triable only under the special plea.
The record in this case is that the appellant was arraigned in open court on October 19, 1981, and duly entered a plea of not guilty. No plea of insanity was ever entered by the appellant. The trial was held on November 17, 1981. At no time before or during the trial was the matter of the appellant's mental condition at the time of the trial or the alleged criminal act brought before the trial court, nor was any evidence of the mental state of the appellant presented to the jury or court. Appellant contends in his motion for a new trial that the condition of the appellant's mind was of such a nature that it would not show up readily to an attorney trying the case.
The appellant testified in his own behalf during his trial in the lower court, and admitted that on the occasion of the alleged assault on his grandmother that he went to her house and insulted her; that he saw a knife lying on the porch, and he got it, and started cutting her; that she did not say anything to him; that she was drunk; that she fell on the floor, and he stabbed her while she was on the floor; that the knife he stabbed her with was like a steak knife. On cross-examination he testified, in substance, that he knew he was not supposed to stab her; that it is wrong, and that he knew why he was in court today.
Code Of Alabama, 1975, Section 15-16-1 provides that a plea of insanity must be by a special plea, interposed at the time of arraignment and entered of record upon the docket of the court, which, in substance shall be "not guilty by reason of insanity." This Court, the Supreme Court Of Alabama, and the Supreme Court Of The United *Page 299 
States, has held that the defense of insanity may not be available to one where he has, at the time of arraignment, entered a plea of not guilty, and later requests the trial court to allow him to enter a plea of not guilty by reason of insanity, unless the trial court, in its discretion, allows the plea of insanity to be entered.
We hold that under the facts shown in this record the trial court did not abuse its discretion in overruling appellant's motion to set aside the verdict of the jury and sentence of the court, and grant appellant a new trial so that he could present the defense of not guilty by reason of insanity. Hamilton v.Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; Barnett v.State, Ala.Cr.App. 339 So.2d 1082; Morrell v. State, 136 Ala. 44,34 So. 208; Garrett v. State, 248 Ala. 612, 29 So.2d 8; Section15-16-1 of the Code Of Alabama, 1975.
There being no reversible error, the judgment of the trial court is due to be, and is hereby affirmed.
The foregoing opinion was prepared by Honorable JOSEPH J. MULLINS, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 592